* * * * * * * * * * *
The undersigned reviewed the prior Opinion and Award, based upon the record of the proceedings before Deputy Commissioner Holmes. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; and having reviewed the competent evidence of record, the Full Commission affirms the Opinion and Award of Deputy Commissioner Holmes with minor modifications.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are subject to the North Carolina Workers' Compensation Act.
2. An employment relationship existed between the parties on September 25, 2003.
3. On September 25, 2003, plaintiff sustained a specific traumatic incident. *Page 2 
4. Plaintiff's average weekly wage is $400.00 and her corresponding compensation rate of $266.68.
 * * * * * * * * * * *
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was fifty years old at the time of the hearing before the deputy commissioner. Plaintiff has a high school diploma and has completed some college level courses. Plaintiff was hired in February 2003 to work for defendant-employer, a childcare facility. She was initially hired to work as a teacher in the infant room at the facility on Rice Road in Matthews, North Carolina. In July 2003, she was transferred to the Harris Boulevard location to train as an Assistant Director.
2. As the Assistant Director, plaintiff's job was light duty. At all relevant times, she was still in training and was still completing the Assistant Manager training program which included computer training, review of training materials, and learning the child care licensure compliance requirements. Her job duties also included the following tasks: greeting parents and children at the front desk, receiving tuition payments from parents, giving teachers restroom breaks, checking attendance, and assisting in the kitchens. She was required to give teachers nap room and bath room breaks because the State of North Carolina requires that two teachers be in a class room at all times when the number of children in the room exceeds a certain number.
3. On September 25, 2003, plaintiff sustained a compensable specific traumatic incident. On that date, defendant-employer held a fire drill. Plaintiff went into the infant room and assisted the teachers in removing the babies from the building. She was assisting another *Page 3 
teacher in pushing babies in a crib with wheels. The crib had to be lifted to roll over the threshold at the door. In doing so, plaintiff contends she sustained a back injury. The claim was accepted by defendants as a compensable injury by accident.
4. Plaintiff was initially treated at Randolph Urgent Care on September 25, 2003. A diagnosis of lumbosacral strain was rendered and plaintiff was returned to work with restrictions of no lifting, pulling, bending, climbing stairs or ladders and no kneeling, squatting or stooping.
5. On October 1, 2003, plaintiff presented to Dr. Sonya Buchanan at Concentra Medical Centers with complaints of severe, constant, sharp, shooting low back and lumbar pain with radiation into both legs. She provided a history of L5-Sl surgery the prior year. Dr. Buchanan diagnosed a lumbar strain and lumbar radiculopathy and ordered an MRI. Plaintiff was referred for physical therapy and was released to return to light duty work with no lifting over ten pounds and no squatting or bending.
6. Plaintiff began physical therapy on October 1, 2003 at Concentra. The physical therapist noted that plaintiff's subjective report was inconsistent with the objective findings.
7. On October 3, 2003, plaintiff returned to Dr. Buchanan and reported that her symptoms were no better. Upon examination, plaintiff had positive Waddell's overreaction, positive Waddell's tenderness, positive Waddell's distraction and negative Babinski. A prescription was provided for Ultram, and plaintiff was continued on light duty.
8. A lumber spine MRI was performed on October 6, 2003 in Mecklenburg Diagnostic Imaging. The MRI revealed L5-S1 left intervertebral foraminal stenosis secondary to asymmetric disc bulging L5-S1 disc and L5-S1 facet joint arthrosis.
9. Plaintiff was offered transitional light duty employment. She was advised by Debra Miller, the Academy Director, on October 14, 2003, that her treating physician had *Page 4 
released her to return to work and that work was available within her restrictions. Plaintiff was advised that her duties would include reviewing the assistant management training materials, computer training, answering the phone, greeting parents, and giving teachers nap room and bath room breaks. Plaintiff refused the employment stating that she was not going to work, left the defendant-employer's facility and did not return.
10. On October 21, 2003, plaintiff presented to Dr. John Welshofer at Total Spine Specialists. Dr. Welshofer reviewed the MRI and noted that he did not see any significant ruptured disc, and there was more of a disc protrusion.
11. On November 13, 2003, plaintiff underwent electrodiagnostic testing which showed no evidence of radiculopathy. Dr. Welshofer opined that plaintiff had a disc protrusion at L5-S1, but it was not surgical in nature.
12. Plaintiff requested a second opinion with Dr. Hunter Dyer, and Dr. Welshofer noted that if Dr. Dyer felt that there was s surgical lesion, he would take over plaintiff's case. Dr. Welshofer opined that if Dr. Dyer found no surgical lesion, plaintiff should be transitioned back to unrestricted duty for lack of significant evidence for any significant injury.
13. On December 10, 2003, plaintiff presented to Dr. Hunter Dyer with complaints of back and lower extremity pain, worse on the left, but into both legs. Dr. Dyer reviewed the MRI and noted that it showed degenerative disc changes on L5-S1 with a narrowed disc space. Dr. Dyer opined that he did not think that plaintiff was a surgical candidate. Epidural steroid injections were recommended along with conservative treatment measures.
14. Plaintiff underwent bilateral L5 transforaminal epidural steroid injections on January 8, 2004 at Mercy Hospital. *Page 5 
15. Plaintiff presented to Dr. Mark Hartman on January 30, 2004 with complaints of pain in her back and left leg. Dr. Hartman stated that the CT scan showed no significant nerve compression. After examination, Dr. Hartman diagnosed discogenic back pain with left leg pain of questionable origin. He also concluded that plaintiff was not a surgical candidate.
16. On February 5, 2004, plaintiff returned to Dr. Welshofer. She reported that she had the most amazing recovery. Plaintiff stated that her back was essentially pain free. Upon examination, spinal flexibility was normal and tension signs were negative.
17. Plaintiff was released to return to work with restrictions of no lifting, pulling or carrying over twenty pounds, occasional bending and position changes as necessary until March 1, 2003, at which time she is released to unrestricted duty. Dr. Welshofer assigned a zero percent (0%) permanent partial impairment rating to plaintiff's back.
18. After being released to return to work without restrictions plaintiff testified that she did not return to the defendant-employer to request work. In fact, plaintiff testified that, at the time of the hearing before the deputy commissioner, she had applied for very few jobs in the eighteen months since she was released to return to work. She testified that potential employers are not willing to hire her after she tells them of her back problems.
19. Despite the fact that plaintiff was never written out of work and has been released to return to work without restrictions, she testified that she could not think of any job she could do. During cross-examination, plaintiff was only able to identify two places where she had applied for work. She testified that she applied at Young World, but that they were not interested in hiring her after she informed them of her back surgery. She also testified that Dixie Daycare was not willing to consider her for employment because of her back problems. *Page 6 
20. Plaintiff unjustifiably refused suitable employment offered by defendant-employer.
21. Plaintiff has failed to present any credible evidence that she has experienced any period of disability due to the compensable specific traumatic incident.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. On September 25, 2003, plaintiff sustained a specific traumatic incident arising out of and in the course of her employment which resulted in diskogenic back pain. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff bears the burden of proof by the greater weight of the evidence that she is disabled and the extent of her disability within the meaning of the Act. Sims v. Charmes/Arby's Roast Beef,142 N.C. App. 154, 542 S.E.2d 277 (2001). In order to show the existence of temporary total disability, plaintiff must present: (1) medical evidence that she is physically or mentally incapable of work in any employment; (2) evidence that she is capable of some work, but she has, after a reasonable effort on her part, been unsuccessful in her effort to obtain employment; or (3) evidence that she is capable of some work but that it would be futile because of pre-existing conditions, i.e., age, inexperience, lack of education, to seek other employment. Russell v.Lowe's Prod. Distribution, 108 N.C. App. 762, 765, 425 S.E.2d 454, 456
(1993). As plaintiff has failed to prove disability, plaintiff is not entitled to disability benefits. N.C. Gen. Stat. § 97-29. *Page 7 
3. Defendants shall pay for all medical treatment received by plaintiff which was reasonably related to the September 25, 2003 incident. Plaintiff is in need of no further medical treatment as a result of her injuries. N.C. Gen. Stat. § 97-25.
 * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the undersigned enters the following:
 AWARD
1. Plaintiff's claim for indemnity benefits under the North Carolina Workers' Compensation Act is DENIED.
2. Defendants shall pay for all medical treatment received by plaintiff which was reasonably related to the September 25, 2003 incident. Plaintiff is in need of no further medical treatment as a result of her injuries.
3. Defendants shall pay the costs of this action.
This the 27th day of July, 2006.
 S/_____________________ BUCK LATTIMORE CHAIRMAN
CONCURRING:
 S/_____________________ DIANNE C. SELLERS COMMISSIONER
 DISSENTING WITHOUT WRITTEN OPINION: *Page 8 
 S/_____________________ THOMAS J. BOLCH COMMISSIONER *Page 1